OPINION
The plaintiffs, Clarence and Joann Angel, commenced this action in the Court of Common Pleas of Warren County claiming, among other things, a prescriptive easement across a strip of land owned by the defendants, Odus and Rhonda Rudd. The facts of the case, as stated by the Angels and substantially agreed to by the Rudds, are as follows:
 In the year 1946, Green McGuire and his wife purchased a parcel of real estate of 45+ acres in Section 21, Franklin Township, Warren County, Ohio, which was located south of Pennyroyal Road and west of what is now Interstate 75. By that deed, * * * [the] McGuire's [sic] also obtained the right to use a lane extending from the northwest corner of the tract northward to Pennyroyal Road for purposes of ingress and egress. In September 1951, McGuire transferred a one acre tract in the northwest corner of his acreage to Jesse T. Tinch, et ux. * * * The western line of the one acre tract was 20 feet east of and parallel to the western line of the 45+ acre tract. Included in that transfer was the right to use the land lying on the west side of, and within the 20 feet wide parcel adjacent to, the one acre conveyed for purposes of ingress and egress to the public road [Pennyroyal Road]. Then, in January 1954, Green McGuire, et ux., transferred 42+ acres to Russell and Virgie McGuire * * *, which was the balance they then owned of the original 45+ acres, less a 1.95 acre tract located immediately south of the one acre tract conveyed to Tinch. However, Green McGuire failed to retain an ingress or egress easement for the 1.95 acre tract he retained, land-locking the property and thus setting the stage for the instant litigation, as the Angel tract is part of that 1.95 acre tract.
 In February, 1954, Green McGuire transferred the remaining 1.95 acres to James Woodward McGuire, et ux., and in that instrument purported to grant "* * * the right and privilege of using the lane lying along the West side of the above described 1.95 Acre Tract and leading to the Penneroyal [sic] Road * * *." The grant of the use of the lane was defective, because the lane was contained in the tract conveyed to Russell and Virgie McGuire the previous month. * * * Each and every conveyance of the property from that point forward * * * purported to grant the use of the lane, including the deed by which the Angels claim title to their tract * * *.
 Thereafter, in May, 1970, [the] Rudds acquired the 20 foot wide strip of real estate lying west of the Angel tract and containing the lane described in Defendant's Exhibit 4, which had been used as the means of ingress and egress by the owner's [sic] of the tract now known as the Angel tract.
 In August, 1996, a problem arose between [the] Rudds and [the] Angels. On August 30, Rudd, along with his son, Stan Lee Rudd, attempted to block the Angel driveway by placing large rocks within the 20 foot strip, claiming [the] Angels had no right to use the lane for ingress or egress. In response, Angels filed the instant lawsuit.
The cause came on for hearing before the common pleas court on October 17, 1997, and after presiding over a thorough presentation of factual information concerning the history of the disputed strip of land, the trial court awarded the Angels "a prescriptive easement for ingress and egress across so much of the real estate known as McGuire Lane owned by defendants Odus and Rhonda Rudd as is necessary for ingress and egress into their residence." In the same entry, the trial court denied the Angels any damages for the blockage of their driveway on August 30, 1996.
In its judgment entry, the trial court also particularly limited the prescriptive easement to an area containing four hundred square feet, and the Angels, being dissatisfied with such limitation, filed their notice of appeal to this court alleging, for their only assignment of error, as follows:
 The trial court erred in limiting the appellants' prescriptive easement, evidenced by color of title showing an easement across the entire west side of his lot, to a twenty (20) foot by twenty (20) foot strip of land along the northwest corner of appellants' land and in the northern part of appellees' land.
In this regard, the Angels rely to a considerable extent upon "color of title," as reflected in a series of deeds which profess to pass title to an easement over the strip of land as a means of egress and ingress. In fact, their own deed specifically provides that "the grantor further grants to the grantee herein the right and privilege of using the farm lane lying along the west side of the above-described acre tract and leading to Pennyroyal Road, as a means of egress and ingress to said Pennyroyal Road."
While the tract of land which set off the controversy in the present case is not described by metes and bounds, the strip is nonetheless identifiable from the evidence generally, and the Angel deed particularly shows that the "farm lane lying along the west side" of the one-acre lot extends for about one hundred five (105) feet. Hence, the facts of this case appear to be governed by the principles announced in the oft-cited case of Humphries v.Huffman (1878), 33 Ohio St. 395, where the syllabus provides as follows:
 3. One who enters upon unimproved land, under color of title which describes by metes and bounds the extent of the claim, and actually occupies and improves part thereof adversely to the real owner, claiming the whole, is presumed to hold by constructive possession to the extent of the boundaries called for in his paper title, in the absence of any adverse possession, though there be no inclosure or improvement of the residue of the tract.
 4. To lay the foundation for this presumed or constructive possession, the entry must be under claim or color of title, which describes the land entered upon, and to which the defendant claims title.
 5. Where the entry is without color of title, or upon a paper title, which is void for want of a description of any land, this presumption does not attach, and the adverse possession only extends to that part of the land actually occupied and improved.
In the present case, the record discloses numerous transfers of the land abutting McGuire Lane, some of which date back to quieter times, but there is nothing in the record to suggest that either the grantors or the grantees in such deeds envisioned the easement along the west side of their properties as covering anything less than the frontage facing the "farm lane lying along the west side." Indeed, the only limitation upon the easement located along the west side of the entire lot was that such land only could be used for the purpose of egress and ingress.
Ordinarily, adverse possession only extends to that part of land actually occupied or used for a specific purpose, but where a deed description, as well as common understanding, calls for an expanded or lengthened occupancy or use, as shown by the evidence in this case, "color of title" may be employed to show constructive possession of the entire strip or tract. SeeMontieth v. Twin Falls United Methodist Church, Inc. (1980),68 Ohio App.2d 219.
As heretofore indicated, the frontage of the Angel lot, while not described by metes and bounds, was readily identifiable, and time has apparently had no undermining influence upon the authority of the Humphries case. Accordingly, the judgment of the trial court awarding the Angels a prescriptive right to only such part of the easement as necessary, or twenty feet, was too restrictive. Rather, the color of title, as exemplified by the actual and constructive possession shown by the evidence, entitled them to use the entire west side of their lot for the purpose of ingress and egress.
However, "color of title" is not alone sufficient to prove all of the elements necessary to show adverse possession, and a prescriptive easement, as well as Angels' appeal, is therefore dependent upon a cross-appeal filed by the Rudds, wherein the only assignment of error has been set forth as follows:
 The trial court erred to the prejudice of appellees-cross-appellants when it held that appellants-cross-appellees had a prescriptive easement across their property.
In support of the alleged error, the Rudds properly observe that a party claiming a prescriptive easement has the responsibility of proving by clear and convincing evidence an open, notorious, continuous, and adverse use of the easement for a period of twenty-one years. Nice v. Marysville (1992), 82 Ohio App.3d 109;Hindall v. Martinez (1990), 69 Ohio App.3d 580; J.F.Givia, Inc. v. Cardinal American Corp. (1985), 23 Ohio App.3d 33;McInnish v. Sibit (1953), 114 Ohio App. 490; Manos v. DanCleaners Dyers, Inc. (1952), 91 Ohio App. 361.
Here, the evidence is readily susceptible to a reasonable finding that the use of the land began on January 9, 1954 and continued, at least, until August 24, 1974, when David Bookwalter, a co-owner of the Angels lot, was killed in an accident. Thereafter, Mrs. Bookwalter, the other co-owner, left the premises and stayed with friends in Dayton, but there is no evidence in the record that she intended to abandon or discontinue the use of her property. In fact, there is undisputed evidence in the record that her furniture remained in the house until the date of a subsequent fire at the premises.
In these proceedings, the Rudds argue further that the destruction of the house on the premises by fire terminated the use of the easement and that such fire occurred prior to January 9, 1975. However, the evidence as to the approximate date of the fire, which occurred after the death of David Bookwalter, is sketchy and uncertain, but it does appear that the mortgagee-owner of the property held one or more meetings on the property and used the easement for ingress and egress as late as May 1975. Hence, this court is not disposed to interfere with the factual determination of the trial court that the use was continuous, open, and adverse for a period in excess of twenty-one years.
In support of their assignment of error, the Rudds also contend that they gave permission to one of the intervening owners, Denver Vaughn, to use the lane for ingress and egress, and it is fundamental, of course, that permissive use defeats a claim of adverse possession. 2 Ohio Jur.3d (1998) 452, Adverse Possession, Section 24. See, also, Monroe Bowling Lanes v.Woodsfield Livestock Sales (1969), 17 Ohio App.2d 146. In this regard, however, the evidence discloses that for many years after January 9, 1954, the various owners of the Angel tract used the "farm lane lying along the west side" of the property as a means of ingress and egress. And with particular reference to the Rudds' claim that such adverse use for the required twenty-one year period was interrupted by a grant of permission to use the lane, the applicable law is stated in Pavey v. Vance (1897),56 Ohio St. 162 as follows:
 Where one uses a way over the land of another without permission as a way incident to his own land and continues to do so with the knowledge of the owner, such use is, of itself adverse and evidence of a claim of right. And where the owner of the servient estate claims that the use was permissive, he has the burthen of showing it.
In the present case, Odus Rudd testified that he purchased the lane in 1970, that he was aware of the easement, or color of title, as expressed in the deed of Denver Vaughn, who previously owned the Angel tract, and that he told Vaughn at the time that "there's no problem for you using the lane." However, there is nothing in the record to suggest that Denver Vaughn relied upon anything other than the language of his deed, and nothing appears thereafter from the actions of either Vaughn or Rudd to hint that the use of the strip for ingress and egress was permissive rather than adverse.
A fair analysis of all of the evidence upon the claimed permissive use of the lane supports the determination of the trial court, but in any event, the state of the evidence upon the issue is such as to preclude any interference from a reviewing court. See C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279;State v. DeHass (1967), 10 Ohio St.2d 230. Likewise, the evidence of adverse possession, including tacking, when coupled with "color of title," is sufficient to support the conclusion of the trial court.
Upon the record presented, therefore, and with particular reference to both the appeal and the cross-appeal, the judgment will be amended to include a prescriptive right to use the total frontage of the Angel lot for purposes of ingress and egress, and as so modified, the judgment of the common pleas court will be affirmed.
Affirmed as modified.
POWELL, P.J., and WALSH, J., concur.
Kerns, J., retired of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.