Zimmerman, J.
 

 Was the Court of Appeals correct in adjudging that plaintiffs are entitled to a way or easement of necessity from their premises over defendant’s premises to the southerly end of Forest Drive?
 

 In attempting to answer this question, an examination of the stipulation of facts submitted by the parties to the Court of Appeals becomes necessary.
 

 Such stipulation, which is neither as complete nor satisfactory as could be desired, shows that on May 13, 1867, one Mary Lane acquired by deeds lands which embrace the properties now owned by the plaintiffs and defendant, respectively, plus a strip of land 33 feet in width running from the southeast corner of the 25-acre tract, now owned by plaintiffs, east to
 
 *290
 
 the center of a thoroughfare called Cahoon road. Apparently this strip of ground is still owned by the heirs of Mary Lane.
 

 By deed recorded August 10, 1881, this same Mary Lane acquired title to another strip of land 33 feet wide and extending east from the northeast corner of plaintiffs ’ present land to the center of Cahoon road, which was used until the year 1928 for the purpose of ingress and egress.
 

 By deed recorded September 5, 1881, Mary Lane conveyed to the New York, Chicago & St. Louis Railroad Company a right of way which effected a complete separation of the lands now owned by plaintiffs and defendant.
 

 Thus, in 1881, a condition was brought about whereby the original parcel of land was divided by a railroad right of way -with two strips of land 33 feet wide and extending from Cahoon road to the 25-acre tract lying south of the railroad right of way and now belonging to plaintiffs.
 

 The property involved in the instant controversy continued to be owned by Mary Lane and her heirs until February 19, 1921, when the heirs conveyed the same to two persons named Dodd and Aldrich. In the conveyance there were three separate descriptions, one description included plaintiffs’ present property, another defendant’s present property and the remaining one the strip of land 33 feet wide and extending from the northeast corner of plaintiffs’ premises to the center of Cahoon road. Each of such three descriptions referred to the railroad right of way as a boundary.
 

 Sometime during the year 1921 Dodd and Aldrich constructed a crossing seven feet wide over the tracks and right of way of the railroad and connecting the premises now owned by plaintiffs with those now owned by defendant. Such railroad crossing was used
 
 *291
 
 by Dodd and Aldricb from the year 1922, and upon the establishment of Forest Drive in 1925 they traveled across the land now owned by defendant along a line between the railroad crossing and the south end of Forest Drive. The nature and extent of such use are not disclosed, but it apparently continued for an undisclosed purpose until the separate and distinct tax sales in 1940.
 

 By the present action plaintiffs seek to enjoin the defendant from interfering with their use of the passage or alleged easement from their land across his land to Forest Drive.
 

 An easement has been defined as “a right without profit, created by grant or prescription, which the owner of one estate [called the dominant estate] may exercise in or over the estate of another [called the servient estate] for the benefit of the former.”
 
 Yeager
 
 v.
 
 Tuning,
 
 79 Ohio St., 121, 124, 86 N. E., 657, 658, 19 L. R. A. (N. S.), 700, 128 Am. St. Rep., 679.
 

 An easement may be acquired only by grant, express or implied, or by prescription.
 

 Where, however, the easement sought to be enforced is grounded upon implication rather than express grant, it must be clearly established that such a right exists. Implied easements are not favored because they are in derogation of the rule that written instruments speak for themselves.
 
 Ciski
 
 v.
 
 Wentworth,
 
 122 Ohio St., 487, 172 N. E., 276.
 

 An implied easement is based upon the theory that whenever one conveys property he includes in the conveyance whatever is necessary for its beneficial use and enjoyment and retains whatever is necessary for the use and enjoyment of the land retained.
 

 There being in this case no express grant of an easement, it becomes necessary to determine whether one arose by implication.
 

 Easements may be implied in several ways — from an
 
 *292
 
 existing use at the time of the severance of ownership In land, from a conveyance describing the premises as bounded upon a way, from a conveyance with reference to a plat or map or from necessity alone, as in the case of ways of necessity. 15 Ohio Jurisprudence, 37, Section 27.
 

 Here, we are concerned only with the first and last of these methods, namely, a use existing at the time of severance or a way of necessity.
 

 It is a well settled rule that a use must be continuous, apparent, permanent and necessary to be the basis of an implied easement upon the severance of the ownership of an estate. 28 Corpus Juris Secundum, Easements, 691, Section 33; and 15 Ohio Jurisprudence, 37, 45, Sections 28, 33.
 

 For a use to be permanent in character “it is required that the use shall have been so long continued prior to severance and so obvious as to show that it was meant to be permanent; a mere temporary provision or arrangement made for the convenience of the entire estate will not constitute that degree of permanency required to burden the property with a continuance of the same when divided or separated by conveyance to different parties.” 28 Corpus Juris Secundum, Easements, 691, 692, Section 33; and 15 Ohio Jurisprudence, 41, Section 31.
 

 Moreover, a use to which one part of the property has been subjected for the benefit of another part will not be recognized as an implied easement on a severance of ownership unless the use is reasonably necessary to the enjoyment of the dominant estate; convenience alone is not enough. 28 Corpus Juris Secundum, Easements, 692, Section 66; and 15 Ohio Jurisprudence, 43, Section 32.
 

 In line with the policy restricting the doctrine of implied easements, the burden of proof rests upon him who asserts it to show the existence of all facts neces
 
 *293
 
 sary to establish his right to an easement by implication. 17 American Jurisprudence, 945, Section 32; and 15 Ohio Jurisprudence, 144, Section 121.
 

 The record in this case fails to disclose the extent, nature or purpose of the use made by Dodd and Aldrich of the way now claimed by plaintiffs. A showing of the requisite elements of a continuous, apparent, permanent and necessary use is lacking, and such elements may not be supplied by guess or conjecture.
 

 Plaintiffs having failed, then, to present facts sufficient to warrant the finding of an implied easement from an existing use, we come to a consideration of whether the facts disclosed are such as to sustain a way of necessity.
 

 An implied easement or way of necessity is based upon the theory that without it the grantor or grantee, as the case may be, can not make use of his land. It has been stated that ‘ ‘ necessity does not of itself create a right of way, but is said to furnish evidence of the grantor’s intention to convey a right of way and, therefore, raises an implication of grant.” 17 American Jurisprudence, 961, Section 48.
 

 A way of necessity will not be implied where the claimant has another means of ingress or egress, whether over his own land or over the land of another.
 

 In this case the record shows that the lands now owned by plaintiffs and defendant, respectively, were actually separated in 1881 when the railroad acquired and established its right of way. For over 40 years thereafter there was no connection between these lands. As already noted, up to the year 1928 the strip of land 33 feet wide, still in the names of Dodd and Aldrich and connecting Cahoon road with the northeast corner of plaintiffs ’ property, was used as a way of travel to and from such property.
 

 True, in 1921, when Dodd and Aldrich owned the lands now held by plaintiffs and defendant, they did
 
 *294
 
 construct a crossing over the railroad right of way and used this crossing to connect the lands presently owned by plaintiffs and defendant and later used a part of what is now defendant’s property as a way to Forest Drive, but this arrangement upon the record may be regarded as but a means to facilitate the reciprocal use of the lands lying on either side of the railroad, which were then under common ownership, and not as a way of necessity in favor of those who might make separate purchases of the land to the south of the railroad from another grantor, who was a stranger to defendant and his land, as did plaintiffs. It is to be remembered that Dodd and Aldrich, at all times they owned what is now plaintiffs’ land, had access thereto from a highway over the described strip of land 33 feet wide which they then owned and now own.
 

 In our opinion plaintiffs do have a means of access to their lands from Cahoon road over the strip of ground 33 feet wide, referred to above, now belonging to those in plaintiffs’ chain of title, and this being so they are not in a position to successfully assert an easement or way of necessity over defendant’s property.
 

 This court is of the view that the situation here presented is controlled, in principle, by the second paragraph of the syllabus of
 
 Meredith
 
 v.
 
 Frank,
 
 56 Ohio St., 479, 47 N. E., 656, which reads:
 

 “It is a general rule that one cannot derogate from his grant; so that to warrant the inference of a way reserved by implication, it must be one of strict necessity to the remaining lands of the grantor; it is not merely a matter of convenience and if the grantor has another mode of access to his land, however inconvenient, he cannot claim a way by implication in the lands conveyed, though he may have been in the use of a way over it to a public highway at and a long time before the conveyance, and of which the grantee had notice at the time.” Compare
 
 Jordan
 
 v.
 
 Breece Mfg. Co.,
 
 89 Ohio St., 311, 106 N. E., 46.
 

 
 *295
 
 A way of necessity will not be implied, where there is another or other outlets available to a public thoroughfare, even though such other outlets are less convenient and would necessitate the expenditure of a considerable sum of money to render them serviceable. 15 Ohio Jurisprudence, 62, Section 44.
 

 The above proposition is well stated by the Supreme Court of Appeals of Virginia in
 
 Jennings
 
 v.
 
 Lineberry,
 
 180 Va., 44, 48, 49, 21 S. E. (2d), 769, 770, as follows:
 

 “A
 
 right of way of necessity does not arise if there be already another mode of access to the land, though less convenient or more expensive to develop.
 

 C i
 
 * #
 

 “ A way of necessity will not be decreed unless the evidence showing the need therefor is clear and convincing. Such a way is not sanctioned when there is available another means of ingress and egress to and from the claimant’s land even though it may be less convenient and will involve some labor and expense to repair and maintain. ’ ’
 

 Although it would be much more convenient and much less expensive for plaintiffs to traverse defendant’s property to reach a public street, the imposition of such a burden on defendant’s land on the theory of a way of necessity is legally unwarranted in the circumstances exhibited by the record.
 

 The judgment of the Court of Appeals is, therefore, reversed and final judgment rendered for defendant.
 

 Judgment reversed.
 

 Matthias, Hart, Stewart, Taft and Faught, JJ., concur.